UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-80908-CIV-MATTHEWMAN

GREGORY SHAWN,

            Plaintiff,

v.

KILOLO KIJAKAZI[1],
Acting Commissioner of Social Security
Administration,

            Defendant

_____/

FILED BY ____ KJZ ____ D.C.

Sep 14, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## <u>ORDER ON MOTIONS FOR SUMMARY JUDGMENT [DEs 25, 26]</u>

THIS CAUSE is before the Court upon Plaintiff, Gregory Shawn's ("Plaintiff") Motion for Summary Judgment [DE 25], and Defendant, Kilolo Kijakazi, the Acting Commissioner of Social Security's ("Defendant") Motion for Summary Judgment [DE 26]. Plaintiff has also filed a reply [DE 34]. The motions are fully briefed and ripe for review. The issue before the Court is whether the record contains substantial evidence to support the denial of benefits to Plaintiff and whether the correct legal standards have been applied. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## I. <u>FACTS</u>

On June 18, 2019, Plaintiff filed an application for supplemental security income, alleging disability beginning on November 1, 2018. [R. 21].[2] The claim was denied initially and upon

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. 405(g).

[2] All references are to the record of the administrative proceeding filed by the Commissioner at Docket Entry 18.

reconsideration. [R. 120]. Following a telephone hearing on May 15, 2020 [R. 59–86], the Administrative Law Judge ("ALJ"), Mary Brennan, issued a decision on May 27, 2020, denying Plaintiff's request for benefits. [R. 120–130].

A request for review was filed by Plaintiff with the Appeals Council. On August 28, 2020, the Appeals Council issued an order vacating the ALJ's decision and remanding the case to the ALJ. [R. 134–137]. The Appeals Council remanded this case to the ALJ for resolution of the following issues:

● The hearing decision does not adequately consider the prior administrative medical findings from Pamela D. Green, Ph.D. and David Tessler, Psy.D., State agency psychological consultants. Drs. Green and Tessler both opined that the claimant was limited to performing simple tasks (Exhibits 2A, pages 10-12 and 4A, pages 12-14). The Administrative Law Judge found these prior administrative medical findings "generally persuasive," but the decision does not include a limitation for simple tasks in the residual functional capacity. The decision also does not provide an explanation about why such a limitation was not persuasive. Therefore, further consideration should be given to Drs. Green and Tessler's prior administrative medical findings.

● The Administrative Law Judge found that the claimant has a residual functional capacity for a range of medium work as defined in 20 CFR 416.967(c), which includes a limitation for occasional interactions with the public, coworkers, and supervisors (Finding 4). At step four of the sequential evaluation, the Administrative Law Judge then found that the claimant is capable of performing his past relevant work as a telephone sales representative. A review of the Dictionary of Occupational Titles (DOT), however, suggests that this job likely requires social interactions in excess of the residual functional capacity. Specifically, the description of telephone sales representative (DOT 299.357-014) indicates that it requires dealing with people and influencing them in their opinions, attitudes, and judgements. As this job description appears to conflict with the residual functional capacity, further consideration should be given to whether the claimant is capable of performing his past relevant work.

● In an alternative step five finding, the Administrative Law Judge also found that the claimant could perform the representative occupations of laundry laborer, hand packager, and packager. A review of the DOT, however, indicates that the latter two jobs entail non-exertional limitations that conflict with the residual functional capacity. Specifically, the hand packager (DOT 920.587-018) requires frequent

exposure to extreme heat, which conflicts with the limitation to occasional temperature extremes. Similarly, the packer job requires frequent stooping and crouching, which is inconsistent with the limitation to occasional stooping and crouching. The hearing decision neither identified nor resolved these conflicts as required by Social Security Ruling 00-4p.

[R. 135–36]. The Appeals Council specifically required the ALJ to do the following:

● Give consideration to the prior administrative medical findings pursuant to the provisions of 20 CFR 416.920c. As appropriate, the Administrative Law Judge may request the medical sources to provide additional evidence and/or further clarification of the opinion (20 CFR 416.920b).

● Give further consideration to whether the claimant has past relevant work and, if so, can perform it (20 CFR 416.960(a)-(b)). If warranted, obtain vocational expert evidence to assist in evaluating whether the claimant can perform past relevant work.

● If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

[R. 136].

Following a subsequent telephone hearing on December 7, 2020, the ALJ, Mary Brennan, issued a decision on December 16, 2020, denying Plaintiff's request for benefits. [R. 10–22]. A request for review was filed by Plaintiff with the Appeals Council and denied on March 16, 2021. [R. 1–6].

3

A.   Relevant Hearing Testimony

The ALJ held a hearing by telephone on December 7, 2020. [R. 34]. Plaintiff was represented by his non-attorney representative. [R. 34]. Plaintiff was 43 years old at the time of the hearing. [R. 36]. His testimony established the following facts.

Plaintiff has a GED but did not go further in school than that. [R. 36]. He also has a driver's license and a car. [R. 36]. He lives alone and last drove two and a half weeks prior to the hearing. [R. 37]. Plaintiff has no source of income, but his father and brother assist him financially when they can. [R. 37]. In the past, Plaintiff worked for Capital Debt Relief in sales and as a credit counselor. [R. 37]. He also worked for Betouch Management Venture in telephone sales. [R. 37–38].

Plaintiff's most recent job, until late 2018, was as a self-employed horologist restoring high-grade watches. [R. 38–39, 43]. He was a subcontractor who got work from several jewelers. [R. 39]. Plaintiff had this job for between 8 and 10 years. [R. 39, 42]. Plaintiff's father and brother paid for Plaintiff's office when he was refinishing the watches. [R. 40]. Plaintiff missed a lot of work due to his mental and physical issues and made under $14,000 per year. [R. 43–44]. According to Plaintiff, he had issues with previous employers because he was missing a lot of work. [R. 44]. When he worked as a horologist, he could only work for about three hours a day before the pain from sitting became too unbearable. [R. 45]. Also, his hands cramped up. [R. 45]. Plaintiff feels he is unable to work because he has a major degenerative disc disease, herniated bulging discs in his back and neck, and side effects, including extreme pain, from a gallbladder surgery that took place 1.5 to 2 years before the hearing. [R. 45–46].

Plaintiff cannot see any doctors because he does not have insurance. [R. 46]. His father is currently assisting him with the rent for his home and cannot help Plaintiff any more than that. [R. 46]. Plaintiff has so many ongoing issues that he needs to see different specialists and doctors. [R. 46]. Due to the gallbladder surgery, he experiences pain and discomfort every single day, he has trouble keeping food down, and he has lost about 80 pounds. [R. 46]. Plaintiff also has mental issues and other physical issues that, in combination, cause him to stay inside and not interact with anyone. [R. 46–47]. He only sees his father about twice per month and his brother once every four to six months. [R. 55].

Plaintiff was overweight for most of his life and weighed about 245 or 250 pounds at the time of his gallbladder surgery. [R. 47]. He weighed 180 to 185 pounds at the time of the hearing. [R. 47]. While the lower weight is healthier, Plaintiff lost the weight in an unhealthy manner since he cannot keep food down and is nauseated all of the time. [R. 47]. Plaintiff's three mental health medications also make him drowsy and dizzy. [R. 47]. He takes Ativan for his extreme panic attacks which occur several times a week. [R. 47]. For his extreme social anxiety, he takes Seroquel. [R. 47]. And, for his bipolar disorder and PTSD from childhood trauma, he takes Lamotrigine. [R. 48].

Plaintiff saw his doctor in June 2019, in May 2020, and about a week before the hearing. [R. 48]. His doctor prescribes him medication for about six months at a time and then he touches base with her and has a phone or in-person appointment. [R. 49]. Plaintiff needs to see his doctor more often but cannot afford to. [R. 49]. He believes he needs extensive therapy three to four times per month. [R. 49]. Plaintiff has not sought out more low-cost, affordable treatment because he is comfortable with his current doctor and does not want to speak to another doctor about his

childhood trauma. [R. 49–50]. Plaintiff cannot go a day without his medication, so his father and mother pay for the prescriptions when it is time to re-fill. [R. 51]. The doctor does not charge him full price for the prescriptions either. [R. 51]. Plaintiff is not getting any treatment for his physical symptoms, but he needs to. [R. 54].

Plaintiff stopped caring about his appearance a long time ago, but he can dress himself. [R. 51]. He does not prepare food for himself; rather, he buys ready-made food at the grocery store, or his father brings him food. [R. 51–52]. During the day, Plaintiff listens to the radio on his phone and barely watches any television. [R. 52]. Most of the day, and for at least four hours, he sleeps. [R. 52]. Plaintiff is always up at night because he has trouble sleeping. [R. 52]. He uses his smartphone to make online purchases and has a bank account. [R. 53]. Plaintiff's father pays his rent and bills but provides Plaintiff with $115 or $200 on a weekly basis to pay for groceries and other things. [R. 53–54]. Plaintiff's father is ill and working less, so he cannot contribute as much to Plaintiff's living expenses. [R. 54].

Pamela Leggett, the vocational expert ("VE"), testified at the hearing. [R. 55–58]. She first classified Plaintiff's prior work of dial refinisher and credit counselor. [R. 56]. The ALJ then posed a hypothetical involving an individual of the same age, education, and work experience as Plaintiff, who is capable of performing work at the medium level; should not climb ladders, ropes, or scaffolds; could frequently climb ramps and stairs; could occasionally balance, stoop, kneel, crouch, and crawl; could have occasional exposure to temperature extremes and vibrations; could occasionally work in high, exposed places or in close proximity to moving mechanical parts; is capable of understanding, remembering, and carrying out simple and routine tasks; could maintain attention and concentration for two-hour segments over the course of an eight-hour workday; and

6

is limited to no more than occasional interaction with the public, co-workers, and supervisors. [R. 56–57]. The VE explained that such an individual could not perform Plaintiff's past work. [R. 57]. However, the VE stated that such an individual could perform the positions of dryer attendant, rack loader, and production helper, all of which have medium exertional levels. [R. 57]. The VE additionally testified that an individual who would be absent from work two or more times per month could not be employed competitively. [R. 57].

Next, Plaintiff's representative asked the VE whether, if a person needed to take a break that took them off task and the number of breaks were unscheduled but added up to at least 25% of the workday, this would eliminate the positions the VE identified. [R. 57]. The VE responded that it would eliminate the positions. [R. 57].

### B.   Medical Record Evidence

In reaching her decision to deny Plaintiff's benefits, the ALJ reviewed the medical evidence of record, only the relevant portion of which is summarized chronologically below.

Plaintiff began seeing Dr. Nayda Kubski in March 2014. [R. 380]. According to the medication section of Plaintiff's patient chart, she has been prescribing him various psychiatric drugs since that time. [R. 380–381]. In June 2019, Dr. Kubski prescribed Plaintiff Lexapro, Lorazepam, and Seroquel. [R. 380–381]. Dr. Kubski's written notes from 2017, 2018, and 2019 are more or less illegible. [R. 382, 384–387, 413, 415, 420–422]. However, Dr. Kubski did note on December 5, 2017, that Plaintiff was feeling ok. [R. 384].

On April 23, 2019, Plaintiff presented to JFK Medical Center with tightness in his chest and trouble breathing. [R. 356–378]. He was diagnosed with acute chest pain and discharged the next day. [R. 357, 367].

Plaintiff completed a Function Report dated August 4, 2019. [R. 301–308]. He also submitted a Supplemental Pain Questionnaire dated August 10, 2019. [R. 314–315].

On August 21, 2018, Daniel L. Ward, Ph.D., a licensed psychologist, interviewed Plaintiff upon authorization of the Division of Disability Determinations. [R. 388]. Dr. Ward noted that Plaintiff made good eye contact, had an appropriate overall activity level, had appropriate attire, grooming, and hygiene, had normal speech, maintained a relatively appropriate conversation style, and appeared to understand comments and questions without difficulty. [R. 390]. Plaintiff's mood expression during the interview appeared depressed and anxious with a dysphoric affect. [R. 390]. He reported a history of protracted depression, anxiety, and poor anger control and stated that he has good and bad days with regard to his mood. [R. 390]. Plaintiff also reported the following symptoms for more than two years: depressed mood more days that not, difficulty concentrating, chronic irritability, persistent fatigue and lack of energy, anhedonia, social withdrawal, sleep difficulties including difficulty falling and staying asleep, loss of appetite, hopelessness, feelings of worthlessness, excessive inappropriate guilt, and uncontrollable crying two to three times per week. [R. 390]. He was tearful on and off throughout the interview. [R. 390]. Plaintiff also reported a history of suicidal ideation, but he denied currently considering suicide. [R. 390–391].

Dr. Ward noted that Plaintiff's thought expression during the interview appeared rational and coherent, but at times emotional. [R. 391]. Plaintiff was able to attend throughout the interview, but he reported sometimes getting distracted in his daily life. [R. 391]. Plaintiff was oriented to time, place, person, and situation. [R. 391]. He described his memory as "pretty good" and was able to recall three words after a five-minute period. [R. 391]. Plaintiff showed no signs of hallucinations during the interview, but he reported a history of auditory hallucinations a couple

of times a month during his adult life which stopped when he began taking psychotropic medication four to five years prior. [R. 391]. Plaintiff similarly reported seeing a demon and having visions of hurting his father while he was a child and adolescent, but he stated the visions also stopped once he began taking medication four to five years prior. [R. 391].

Dr. Ward diagnosed Plaintiff with Major Depressive Disorder, Recurrent, Moderate; Panic Disorder; and Unspecified Psychotic Disorder (Medicated). [R. 391]. He also provisionally diagnosed Plaintiff with Cannabis Use Disorder, Mild (Active), and Unspecified Personality Disorder, but noted the lack of prior documentation. [R. 391]. Dr. Ward noted that Plaintiff has been experiencing protracted depression for more than two years and frequent panic attacks for approximately one year. [R. 391]. Dr. Ward opined that Plaintiff's depressive and anxious symptoms "appear to be exacerbated by physical health problems, chronic pain, and subsequent limitations. Additional emotional distress appears to be associated with reductions in his ability to do things, financial concerns, social withdrawal and diminished social opportunities, missing the self-esteem associated with employment, and decreased self-confidence." [R. 391]. Dr. Ward found that, while the psychotropic medications were decreasing and stopping Plaintiff's hallucinatory symptoms, "it is suspected Mr. Shawn is likely to continue experiencing protracted depression and frequent panic attacks for the foreseeable future." [R. 392]. Dr. Ward recommended that Plaintiff pursue treatment, including ongoing psychiatric monitoring and psychotherapy. [R. 392].

Dr. Ward determined that Plaintiff is able to follow brief and concrete verbal and written directions; has hindered task persistence; needs assistance managing his finances due to his active daily marijuana use; needs no help with his own immediate needs, but only bathes once a week

and can only complete very limited light housekeeping and make simple meals; is socially handicapped to some degree due to protracted depression and frequent panic attacks; and has reduced ability to participate in social interactions requiring patience in difficult situations, careful attention, and protracted concentration. [R. 392]. Dr. Ward opined that Plaintiff's protracted depression and frequent panic attacks, along with his current physical condition, are an "impediment to occupational achievement." [R. 392]. Dr. Ward concluded that "[i]f his physical condition permitted work activity, [Plaintiff] would likely require more encouragement and support than do most people when encountering work difficulties or social challenges. He would probably not do well in occupations requiring frequent, protracted or demanding social interactions." [R. 392]. Finally, Dr. Ward opined that Plaintiff "would likely have significant difficulty managing the expectations of employment at this time. Continued outpatient mental health treatment is recommended." [R. 392].

Plaintiff had a state mental consultative examination conducted on August 21, 2019. [R. 92]. In a Disability Determination Explanation at the Initial Level, Pamela D. Green, Ph.D., determined that Plaintiff's statements regarding his symptoms were only partially consistent with the evidence on record. [R. 94]. She noted that there was no medical opinion from any medical source. [R. 94]. Dr. Green found that Plaintiff's depressive, bipolar and related disorders and his anxiety and obsessive-compulsive disorders are medically determinable impairments that are present but that they do not precisely satisfy the diagnostic criteria. [R. 93]. Dr. Green concluded that Plaintiff has mild limitations in understanding, remembering, and applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing oneself. [R. 93]. Dr. Green

completed a Mental Residual Functional Capacity Assessment and determined that Plaintiff is moderately limited in the following areas: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; and the ability to accept instructions and respond appropriately to criticism from supervisors. [R. 97–98]. Dr. Green found that Plaintiff was not significantly limited in any other areas. [R. 97–98].

In the same Disability Determination Explanation at the Initial Level, Andrew Scanameo, M.D., conducted a state physical consultative examination on August 27, 2019, and determined the Physical Residual Functional Capacity Assessment of Plaintiff. [R. 92, 94–97]. Dr. Scanameo noted that Plaintiff had exertional limitations. [R. 95]. He stated that Plaintiff could: (1) occasionally lift and/or carry up to 50 pounds; (2) frequently lift and/or carry up to 25 pounds; (3) stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; (4) sit (with normal breaks) for a total of about six hours in an eight-hour workday; and (5) push and/or pull an unlimited amount, "other than shown, for lift and/or carry"; (6) frequently climb ramps and stairs; (7) occasionally climb ladders, ropes, and scaffolds; (8) occasionally balance, stoop, kneel, crouch, and crawl; (9) and must avoid concentrated exposure to extreme cold and heat, vibration, and hazards. [R. 95–96]. Based on the assessment of both Dr. Green and Dr. Scanameo, Plaintiff was determined to be not disabled. [R. 100].

On August 27, 2019, Plaintiff presented to Dallas Hessler, D.O., for an initial consultation. [R. 393]. Plaintiff reported that he began experiencing spinal problems when he was 13-15 years old, and his spinal condition was exacerbated in 2005. [R. 393]. He admitted to taking no current medication but stated that he had received cortisone injections in the past with benefit. [R. 393]. Plaintiff also reported he stopped working in 2017 primarily due to spinal pain and mental health issues. [R. 393]. During the mental/psychological portion of the examination, Dr. Hessler noted that Plaintiff was oriented to person, place and time with appropriate eye contact and normal psychomotor activity. [R. 395]. Dr. Hessler also noted that Plaintiff's cervical spine x-ray showed straightening of the normal cervical lordosis and narrowing and endplate spurring at C4-5, C5-6, and C6-7. [R. 395]. The lumbosacral x-ray showed narrowing of L5-S1. [R. 395]. After examining Plaintiff, Dr. Hessler diagnosed him with cervical "DJD", L5-S1 narrowing, and mental health issues. [R. 395]. Dr. Hessler determined that Plaintiff could stand and walk six hours in an eight-hour workday with normal breaks; could sit eight hours in an eight-hour workday with normal breaks; could bend with slight difficulty; could occasionally lift and carry objects weighing up to 40 pounds; and could frequently lift and carry objects weighing up to 25 pounds. [R. 395].

Plaintiff's father, Mark Shawn completed a Function Report—Third Party dated September 2, 2019. [R. 316–323].

In November 2019, additional consultative examinations were conducted on Plaintiff. [R. 107–109]. In a Disability Determination Explanation at the Reconsideration Level, Plaintiff was determined to have the following medically determinable impairments: disorders of the back—discogenic and degenerative (severe); depressive, bipolar and related disorders (severe); anxiety

and obsessive-compulsive disorders (severe); and substance addiction disorders (non-severe). [R. 108].

David Tessler, Ph.D., found on November 19, 2019, that Plaintiff's depressive, bipolar and related disorders and his anxiety and obsessive-compulsive disorders are medically determinable impairments that are present but that they do not precisely satisfy the diagnostic criteria. [R. 108]. Dr. Tessler concluded that Plaintiff has mild limitations in understanding, remembering, and applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing oneself. [R. 108–109]. Dr. Tessler completed a Mental Residual Functional Capacity Assessment and determined that Plaintiff is moderately limited in the following areas: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; and the ability to accept instructions and respond appropriately to criticism from supervisors. [R. 113–114]. Dr. Tessler found that Plaintiff was not significantly limited in any other areas. [R. 113–114].

In the same Disability Determination Explanation at the Reconsideration Level, Gary Smith, M.D., conducted a Physical Residual Functional Capacity Assessment. [R. 110–113]. Dr. Smith determined that Plaintiff had exertional limitations. [R. 110]. He stated that Plaintiff could: (1) occasionally lift and/or carry up to 50 pounds; (2) frequently lift and/or carry up to 25 pounds; (3) stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday;

(4) sit (with normal breaks) for a total of about six hours in an eight-hour workday; and (5) push and/or pull an unlimited amount, "other than shown, for lift and/or carry"; (6) frequently climb ramps and stairs; (7) occasionally climb ladders, ropes, and scaffolds; (8) occasionally balance, stoop, kneel, crouch, and crawl; (9) and must avoid concentrated exposure to extreme cold and heat, vibration, and hazards. [R. 110–112]. Based on the assessment of both Dr. Tessler and Dr. Smith, Plaintiff was determined to be not disabled. [R. 116].

On November 19, 2019, Plaintiff presented to Dr. Daniel Nader Daria reporting lumbar spine pain. [R. 409]. Plaintiff stated that his low back pain was constant, a 7 out of 10, and radiating all over his body. [R. 409]. Plaintiff also stated that the pain was sharp and throbbing and that he could not sit or stand for long since the pain increased with activity. [R. 409]. Dr. Daria conducted an examination of Plaintiff and noted that the exam was normal, Plaintiff's back had no costovertebral angle tenderness, no kyphosis, and no scoliosis, and Plaintiff's spine was nontender to palpation. [R. 412]. Dr. Daria further noted that Plaintiff's joints were normal, his thoracic spine revealed no scoliosis and no kyphosis, and there was no evidence of trigger points. [R. 412]. Plaintiff's extremities showed no atrophy, muscle weakness, or loss of motor strength. [R. 412]. Additionally, Plaintiff's motor strength was normal in the upper and lower extremities, his gait was normal, he could squat, he needed no assistive devices, and all other neurological results were normal. [R. 412]. Dr. Daria found that Plaintiff was alert and oriented; had intact cognitive function, good eye contact, good judgment, and good insight, a full range of mood/affect, no auditory or visual hallucinations, clear speech, thought content without suicidal ideation, and logical and goal-directed thought process; was well-oriented to name, place, and time; recalled five objects out of five after 20 minutes; performed two-step instructions without difficulties; and

could manage his own finances well. [R. 412]. Dr. Daria diagnosed Plaintiff with lumbar spine pain and depression. [R. 412].

C.   ALJ Decision

The ALJ issued a decision on remand on Plaintiff's claim for benefits on December 16, 2020, which is the relevant ALJ decision before the Court. [R. 10-22]. The ALJ first found that Plaintiff has not engaged in substantial gainful activity since June 18, 2019, the application date. [R. 13]. Next, the ALJ determined that Plaintiff had the following severe impairments: cervical and lumbar spine degenerative disc disease, depression, panic disorder, and bipolar disorder. [R. 13]. The ALJ then found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [R. 13]. Accordingly, the ALJ determined that Plaintiff had the following Residual Functional Capacity ("RFC"):

> to perform medium work as defined in 20 CFR 416.967(c). He can never climb ladders, ropes, and scaffolds but can frequently climb ramps and stairs. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. He can tolerate occasional exposure to temperature extremes and vibrations. The claimant can occasionally work in high exposed places or in close proximity to moving, mechanical equipment. He is capable of understanding, remembering, and carrying out simple and routine tasks. The claimant can maintain attention and concentration for 2-hour segments over an 8-hour workday and maintain occasional interactions with the public, coworkers, and supervisors.

[R. 15]. The ALJ attested that, in coming to this determination, she had considered all of Plaintiff's symptoms and "the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as the medical opinions and prior administrative medical findings. [R. 15]. As to those considerations, she found that Plaintiff's

> medically determinable impairments could reasonably be expected to cause some of the alleged symptoms and limitations, the magnitude of the pain and the extent

15

> of those symptoms and limitations attested to by the claimant are not supported by medically acceptable clinical and diagnostic techniques. Further, there is insufficient objective medical evidence that the claimant's asserted impairments are of such severity that they can reasonably be expected to give rise to the alleged level of pain and functional limitations.

[R. 16]. The ALJ explicitly considered the criteria set forth in the regulations at 20 CFR 404.1529(c)(3) and 416.929(c)(3) and in Social Security Ruling 16-3p in evaluating Plaintiff's subjective complaints. [R. 16].

The ALJ discussed in detail the record evidence. [R. 17]. She explained that the two consultative exam reports clearly contradicted Plaintiff's stated limitations and degree of physical impairments, with no clear support for claims of herniated discs; there is no evidence of treatment; there are no prescribed medications for pain; and there are no ER visits for debilitating back pain or other diagnostic studies, such as MRIs of the cervical spine or the lumbar spine. [R. 17]. The ALJ discussed the other medical evidence as well as the evidence regarding Plaintiff's alleged mental condition. [R. 17–19].

> The ALJ determined that the State agency psychological consultants' assessments were
>
> generally persuasive, as they were consistent with and supported by Dr. Ward's detailed evaluation of the claimant, which revealed that he could perform most of the mental tasks asked of him, attend throughout the interview, and interact appropriately, with good response to redirection. The PCs considered much more than the one ER record reviewed by Dr. Ward; therefore, they had a better overview of his functioning.

[R. 19]. The ALJ found "Dr. Ward's opinion regarding social interactions persuasive, but otherwise finds the remainder of his assessment unpersuasive, as they appeared speculative, and they were largely based on the claimant's subjective reports." [R. 19]. The ALJ concluded that she was not persuaded Plaintiff experienced "symptoms of a severity and frequency as to preclude the

level of work reflected in the above RFC determination." [R. 19]. The ALJ noted that, while Plaintiff

> has described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be less persuasive than the other factors discussed in this decision.

[R. 19]. Additionally, she found unpersuasive the Third Party Function Report completed by Plaintiff's father, a non-medical source, because "[w]ithout the necessary medical evidence substantiating the allegations made by the claimant (and his father), there is no objective medical confirmation of the type of limitations asserted." [R. 19–20, n. 1].

The ALJ explained that Plaintiff could not perform any past relevant work. [R. 20]. She noted that he was 42 years old and thus a younger individual on the date the application was filed, that Plaintiff had at least a high school education, and that transferability of job skills was not material to the determination of disability. [R. 20]. In considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. [R. 20]. The vocational expert testified that such jobs include "dryer attendant," "rack loader," and "production helper." [R. 21]. Thus, the ALJ found that Plaintiff had not been under a disability since June 18, 2019, the date the application was filed. [R. 21].

## II. <u>MOTIONS FOR SUMMARY JUDGMENT</u>

In his Motion for Summary Judgment, Plaintiff argues that the ALJ's assessment of his mental RFC limitations is unsupported by substantial evidence, the ALJ's reasons for not crediting Plaintiff's statements are unsupported by substantial evidence, and the Commissioner failed to sustain her burden of establishing that there is other work in the national economy that Plaintiff can perform. [DE 25].

In Defendant's Motion for Summary Judgment with Supporting Memorandum of Law and Opposition to Plaintiff's Motion for Summary Judgment, Defendant asserts that substantial evidence supports the ALJ's RFC finding, the ALJ articulated sufficient reasons supported by substantial evidence in support of finding Plaintiff's subjective complaints to not be entirely supported by the record, and substantial evidence supports the ALJ's finding that Plaintiff could perform other work in the national economy. [DE 26].

In Plaintiff's Reply Brief, he contends that the Commissioner's argument that there was no need for the ALJ to develop the record with legible notes from Dr. Kubski is without merit, that the ALJ's evaluation of Dr. Ward's opinions was not based on substantial evidence, and that the Commissioner has failed to present a convincing defense of the ALJ's subjective complaint evaluation. [DE 34].

## III. <u>RELEVANT LAW</u>

Judicial review of the factual findings in disability cases is limited to determining whether the Commissioner's decision is "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." 42 U.S.C. § 405(g);

*Crawford v. Comm'r of Soc. Sec.*, 363 F. 3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F. 3d 1436, 1439 (11th Cir. 1997)). Courts may not "decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F. 3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the Commissioner's conclusions of law. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F. 3d 1253, 1260 (11th Cir. 2007) (alteration in original) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920 (a)–(f). The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry concludes. 20 C.F.R. § 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If the ALJ finds that claimant does not suffer from a severe impairment or combination of impairments, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. § 404.1520(c).

Step three requires the ALJ to compare the claimant's severe impairment(s) to those in the listing of impairments. 20 C.F.R. § 404.1520(d), subpart P, appendix 1. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that, if they are

established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. *See Gibson v. Heckler*, 762 F.2d 1516, 1518 n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the claimant's impairments prevent him or her from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a *prima facie* case of disability is established. 20 C.F.R. § 404.1520(e). The burden then shifts to the ALJ to show at step five that, despite the claimant's impairments, he or she is able to perform work in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(f); *Phillips*, 357 F. 3d at 1239. In order to determine whether the claimant has the ability to adjust to other work in the national economy, the ALJ may either apply the Medical Vocational Guidelines, 20 C.F.R. pt. 404 subpart P, appendix 2, or utilize the assistance of a vocational expert. *See Phillips*, 357 F. 3d at 1239–40.

## IV. <u>ANALYSIS</u>

A. <u>Whether the ALJ's Assessment of Plaintiff's Mental RFC Limitations Is Supported by Substantial Evidence</u>

Plaintiff argues in his Motion for Summary Judgment that the ALJ's mental RFC assessment is "not supported by substantial evidence as it fails to properly consider any limitations from his treating physician, Dr. Kubski, whose notes, the ALJ conceded were 'mostly illegible.' (Tr. 19). The assessment is also inconsistent with the opinion of . . . Dr. Ward, the examining psychologist." [DE 25 at 11]. Plaintiff argues that "this court should remand for clarification and supplementation of the record of key evidence from [Plaintiff's] treating psychiatrist." *Id.* at 12. Plaintiff contends that the ALJ misstated Dr. Kubski's notes in her decision. *Id.* He cites to several

cases regarding illegible notes, as well as 20 C.F. R. § 416.920b and 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i). *Id.* at 12–15.

Plaintiff next argues that the ALJ's findings regarding Dr. Ward's opinion cannot be sustained. [R. 25 at 15]. He contends that an ALJ cannot reject a provider's opinion on the basis that it is largely based on the claimant's subjective reporting. *Id.* at 16. According to Plaintiff, the ALJ also failed to properly consider the lay evidence from Plaintiff's father in determining Plaintiff's RFC. *Id.* at 17. Plaintiff argues that the statement from his father "is an observation by a family member and could not be rejected simply because it was, in fact, lay evidence." *Id.* Plaintiff also asserts that the father's statement is supported by Dr. Ward's objective findings. *Id.*

Defendant responds that the ALJ "identified substantial evidence that reasonably supported her finding that Plaintiff could perform a range of medium work with additional postural, environmental, and mental limitations." [DE 26 at 6]. Defendant also contends that the ALJ "properly evaluated Dr. Ward's opinion and a third-party function report in accordance with the regulations." *Id.* According to Defendant, the ALJ had no duty to obtain legible notes from Dr. Kubski because the evidence in the record was sufficient to support the ALJ's disability determination, Plaintiff was represented during the proceedings, and recontacting a doctor is within the ALJ's discretion and is only appropriate when the ALJ cannot reach a disability conclusion. *Id.* at 7–8. Defendant argues there is no binding precedent that required the ALJ to try to obtain legible notes, and, here, Dr. Kubski did not provide a medical source statement regarding Plaintiff's ability to perform work activity, so many of the cases cited by Plaintiff are distinguishable. *Id.* at 9. Next, Defendant asserts that substantial evidence supports the ALJ's finding that Dr. Ward's opinion was only partially persuasive. *Id.* at 10–13. Finally, Defendant

maintains that the ALJ properly found the third-party function report by Plaintiff's father to be unpersuasive and that the report is largely cumulative of Plaintiff's own statements. *Id.* at 13–14.

> In reply, Plaintiff first argues that the

> question is never whether the record is merely developed to contain more than a scintilla of evidence. Rather, only where the record is *first* fully developed and sufficient for the ALJ to make an informed decision is there any potential for the substantial evidence standard to come into play. And even then, this standard pertains only to factual findings, not the adequacy of the ALJ's analysis, and is considered with regard to the record as a whole.

[DE 34 at 2]. Next, Plaintiff asserts that the fact that Dr. Kubski's notes stated that Plaintiff was "doing okay" is not a valid basis for supporting the finding on non-disability. *Id.* at 3. Plaintiff further asserts that, since "[m]ental impairment notoriously wax and wane," even had the "one-time examiner failed to detect serious symptoms[,] the need to decode the content of longitudinal treatment notes would remain." *Id.* at 4. In other words, the existence of three consultative examinations does not mean that the record was complete without Dr. Kubski's notes. *Id.* Plaintiff also argues that the ALJ had a duty to develop a full and fair record regardless of whether Plaintiff was represented. *Id.* Plaintiff maintains that "[w]hen Dr. Ward supplied opinions to a reasonable degree of certainty about what limitations appeared to be present or were likely experienced, the psychiatrist was giving his medical opinions in a typical manner." *Id.* at 6. Finally, he argues that the "Commissioner fails to recognize that the assessment of mental disorders often depends in significant part on a clinician's understanding of symptoms within the context of the clinician's experience." *Id.*

1. <u>Whether the ALJ was required to recontact Dr. Kubski to provide legible notes.</u>

In the ALJ's decision, she stated,

In fact, the psychiatric notes from Nayda Kubski, M.D., showed that he was only seen for medication management visits, approximately once per year, e.g., January 2017, April 2018, and June 2019. Dr. Kubski's notes were mostly illegible; however, they generally started out showing that the claimant was "doing ok" and that he had a differential diagnosis of schizoaffective versus bipolar disorder. (See Exhibits 2F and 8F). These records further confirm the claimant receives very minimal treatment.

[DE 18].

Pursuant to 42 U.S.C. § 423(d)(5)(B),

In making any determination with respect to whether an individual is under a disability or continues to be under a disability, the Commissioner of Social Security shall consider all evidence available in such individual's case record, and shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability. In making any determination the Commissioner of Social Security shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis.

42 U.S.C. § 423(d)(5)(B). Additionally, under 42 U.S.C. § 1382c(a)(3)(H)(i), "In making

determinations with respect to disability under this subchapter, the provisions of sections 421(h),

421(k), and 423(d)(5) of this title shall apply in the same manner as they apply to determinations

of disability under subchapter II." 42 U.S.C. § 1382c(a)(3)(H)(i). Furthermore, 20 C.F.R.

§ 416.912(b) states,

Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application. We will make every reasonable effort to help you get medical evidence from your own medical sources and entities that

maintain your medical sources' evidence when you give us permission to request the reports.

20 C.F.R. §416.912(b)(1).

Thus, an ALJ clearly has a basic duty to develop a full and fair record consisting of a claimant's complete medical history for at least twelve months prior to the application. *See Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). An ALJ must inquire into all relevant facts regardless of whether a claimant is represented by an attorney. *See Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982). However, an ALJ is not required to develop evidence to prove a claimant's claim or otherwise act as his counsel. *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).[3] "Nevertheless, the claimant bears the burden of proving that he is disabled, and . . . is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see* 20 C.F.R. § 416.912(a) (stating that the claimant "must prove" that he is blind or disabled and inform the SSA or submit all evidence he knows about that relates to whether or not the claimant is blind or disabled). Recontacting medical sources is within the ALJ's discretion and is only appropriate where the ALJ is unable to make a disability conclusion. *See* 20 C.F.R. § 416.920b(b)(2)(i) (stating that when the evidence is insufficient or the ALJ cannot reach a disability conclusion, an ALJ "*may* recontact your medical source" and "may choose *not* to seek additional evidence or clarification from a medical source if [the ALJ] know[s] from experience that the source either cannot or will not provide the necessary evidence." (emphasis added)).

As an initial matter, the Court notes that Plaintiff's non-attorney representative explicitly stated at the hearing that he had no objections to the record. [R. 34]. Thus, Plaintiff arguably

---

[3] The ALJ's obligation to develop the record rises to a special duty when an unrepresented claimant appears before her. *See id.* Plaintiff was represented by a non-attorney representative during his administrative proceedings [R. 34].

waived the entire illegible notes issue. And this is not a case where the Court is unable to determine whether substantial evidence supports the ALJ's decision. Thus, the issue has been waived. *Marin v. Comm'r of Soc. Sec.*, No. 6:20-CV-1392-DCI, 2021 WL 8946147, at *3 (M.D. Fla. Nov. 2, 2021). However, in an abundance of caution, the Court has carefully reviewed the illegible notes issue regardless of any waiver.

It is clear that the ALJ was required to develop Plaintiff's medical history for the 12 months prior to June 18, 2019. *See* 20 C.F.R. § 416.912(b)(1). Plaintiff argues that the ALJ failed to develop the record because of the lack of legible notes from Plaintiff's only treating physician, Dr. Kubski, and that this failure undermines the ALJ's determination that Plaintiff was not disabled. [DE 25 at 11–12]. The parties have provided no Eleventh Circuit law on the illegible notes issue, and the Court has found none through independent research.

The district court cases Plaintiff cites regarding illegible notes, DE 25 at 11–15, are distinguishable[4] since Plaintiff has failed to show how Dr. Kubski's notes are key evidence, or critical, or even vitally important to Plaintiff's disability determination and relies solely on the fact that Dr. Kubski was Plaintiff's treating physician with regard to his mental conditions.[5] It is

---

[4] For example, in *Eubanks v. Commissioner of Social Security*, No. 6:16-CV-437-ORL-DCI, 2017 WL 4050162, at *2 (M.D. Fla. Sept. 13, 2017), the court noted that the doctor at issue was "the only treating physician whose treatment notes, records, or opinions were before the ALJ" and that "[c]laimant had no other treating physicians or other medical sources." Thus, the court found that the doctor's illegible notes were very important, especially because the ALJ in that case gave great weight to the doctor's diagnosis. *Id.* The facts of this case are distinguishable in that, *inter alia*, there are other medical sources. Similarly, *Yamin v. Commissioner of Social Security*, No. 6:07-CV-1574-ORL-GJK, 2009 WL 799457, at *5 (M.D. Fla. Mar. 24, 2009), involved an illegible Treating Source Mental Health Report and illegible treatment notes, which the ALJ found to be "critical to determining whether substantial evidence existed to support the Commissioner's decision." Here, Dr. Kubski's notes clearly are not "critical." *Id.* Further, Dr. Kubski did not complete a Treating Source Mental Health Report. Additionally, some of the cases Plaintiff cites involve an outdated recontacting regulation not applicable to Plaintiff's case. *See Krapf v. Astrue*, No. 09–60763–CIV, 2009 WL 4892337, at *10-12 (S.D. Fla. Dec. 12, 2009); *Milne v. Colvin*, No. 15-00656-N, 2016 WL 6516821, at *7 (S.D. Ala. Nov. 2, 2016).
[5] To the extent that Plaintiff argues that Dr. Kubski was his only treating physician with regard to this mental condition, the ALJ was not required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinions. § 404.1520c(a).

important to note that Dr. Kubski only treated Plaintiff approximately once a year for medication management, which, does in fact, support the ALJ's finding in her decision that Plaintiff received "minimal treatment." And Dr. Kubski did not provide a medical source statement regarding Plaintiff's ability to perform work activities. Thus, it is extremely unlikely that Dr. Kubski's mere observations of Plaintiff or her recitation of Plaintiff's complaints only once a year for three years would discredit all of the other record evidence and findings upon which the ALJ relied. The Court also points out that Dr. Kubski's notes do contain legible medication records and some additional legible words. For example, the Court does agree with the ALJ that the notes do, in fact, state that Plaintiff was "doing ok." This demonstrates that the ALJ clearly tried to decipher the notes and did so to the best of the ALJ's ability.

Furthermore, it would be illogical to require remand every single time there are illegible doctor's notes in a medical record. In the Court's experience, a great number of doctors have poor penmanship, and the vast majority of social security appeals thus include some illegible notes. A more logical practice is for courts to conduct a fact-specific analysis on a case-by-case basis to determine if remand is appropriate. Here, the specific facts of this case show that remand is inappropriate.

Moreover, Plaintiff fails to acknowledge that recontacting is discretionary, that an ALJ may choose not to seek additional evidence or clarification from a medical source if the ALJ knows from experience that the source either cannot or will not provide the necessary evidence, and that recontacting is not the only means by which an ALJ may develop the record. Here, recontacting was not appropriate because sufficient evidence existed to make a disability determination. *See* 20 C.F.R. § 416.920b(b)(2)(i). Specifically, the record included consultative examination reports with

objective findings regarding Plaintiff's mental conditions and the opinions from State agency consultations.

In sum, the record was sufficient for the ALJ to evaluate Plaintiff's impairments and functional ability. The ALJ has a duty to develop the record but is not required to prove Plaintiff is disabled. Further, the ALJ did not have a duty to seek to obtain legible notes under the circumstances and facts present in the instant case.

2.  Whether substantial evidence supports the ALJ's finding that Dr. Ward's opinion is only partially persuasive.

The law regarding how much deference to give treating physicians has changed for claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1527. Here, Plaintiff's claim was filed after March 27, 2017, and so the new regulations apply. The new regulations, which omit entirely the term "treating source," state that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." § 404.1520c(a). Instead, all medical opinions are to be evaluated according to the factors listed in § 404.1520c(c), of which the most important are the supportability and consistency of the medical opinion. *See id.* Moreover, the ALJ is not required to articulate how he or she "considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 404.1520c(b)(1).

Supportability refers to the relevance of "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her" opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency looks to whether "the evidence from other medical sources and nonmedical sources in the claim" are consistent with the medical opinion presented. 20 C.F.R. § 404.1520c(c)(2). The other factors, which the ALJ is not required to consider, § 404.1520c(b)(2), concern the medical source's relationship with the claimant, § 404.1520c(c)(3), the medical

source's specialization, § 404.1520c(c)(4), and any "other factors that tend to support or contradict a medical opinion." § 404.1520c(c)(5); *see also Bonilla v. Saul*, No. 19-25323-CIV, 2020 WL 9048787, at *4–5 (S.D. Fla. Oct. 23, 2020), *report and recommendation adopted*, No. 19-CV-25323, 2021 WL 1198296 (S.D. Fla. Mar. 30, 2021).

Thus, under the revised regulations, which the Court is applying in this case, the ALJ was only required to explain how she considered the factors of supportability and consistency (unless, of course, she found that two or more medical opinions on the same issue were both equally well-supported and consistent with the record, which the ALJ did not find in this case). Here, the ALJ did properly consider supportability and consistency in finding Dr. Ward's opinion partially persuasive. The ALJ found Dr. Ward's opinion regarding social interactions to be persuasive but found that the remainder of Dr. Ward's assessment was unpersuasive as it "appeared speculative" and was "largely based on the claimant's subjective reports." [R. 19]. The ALJ found more persuasive the opinions of the State agency psychology consultants because they considered more than the one emergency room record Dr. Ward reviewed. [R. 19]. While Plaintiff argues that the ALJ cannot reject a provider's opinion on the basis that it is largely based on the claimant's subjective reporting, an ALJ may reject a medical opinion for lack of supportability and consistency, as is the case here. *See* 20 C.F.R. §§ 416.920c(b)(2), 416.920c(c)(1)-(2). In sum, the ALJ complied with the revised Social Security regulations and provided several reasons to discount Dr. Ward's opinions. Therefore, Plaintiff's argument is without merit.

3. Whether the ALJ properly found unpersuasive a third-party function report completed by Plaintiff's father.

An ALJ will "consider descriptions and observations of [a claimant's] limitations from [his or her] impairment(s), including limitations that result from [his her] symptoms, such as pain, provided by [the claimant], [the claimant's] family, neighbors, friends, or other persons." 20 C.F.R. § 416.945(a)(3). However, an ALJ is "not required to articulate" how she "considered evidence from nonmedical sources." 20 C.F.R. § 416.920c(d). The regulations require the ALJ to only consider the lay evidence, as she did here. *See* 20 C.F.R. § 416.945(a)(3). The ALJ was not required to adopt a lay witness's statement or explain her reason for not adopting it. *See* 20 C.F.R. § 416.920c(d).

Here, the ALJ found the Third Party Function Report completed by Plaintiff's father to be "unpersuasive" as there was a lack of "necessary medical evidence substantiating the allegations made by claimant (and his father)" and there was "no objective medical confirmation of the type of limitations asserted." [R. 19-20]. This is not a case where the ALJ ignored the Third Party Function Report or failed to consider it. The ALJ clearly considered the non-medical Third-Party Function Report and even articulated why she found it unpersuasive. She thus fulfilled her obligations.

### B. Whether the ALJ's Reasons for Not Crediting the Testimony of Plaintiff are Supported by Substantial Evidence

Plaintiff argues that the ALJ's findings regarding his daily activities "appear to be boilerplate and not specific to the findings of record in this case. As such, they are deficient as a matter of law." [DE 25 at 18]. Plaintiff further argues that his statements regarding his daily activities are actually supported by objective evidence in the findings of Dr. Ward. *Id.* at 19. He

contends that the evidence regarding his daily activities, "when considered as a whole, is not inconsistent with his disability claim. [Plaintiff] spends his days at home in a familiar environment, mostly sleeping, and rarely ventures out." *Id.*

In response, Defendant argues that the ALJ "considered appropriate regulatory criteria and articulated adequate reasons supported by substantial evidence for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence in the record." [DE 26 at 15]. Defendant asserts that the ALJ properly "considered Plaintiff's statements regarding his limited daily activities were outweighed by other evidence she discussed in the decision. The mostly unremarkable objective findings, the nature of Plaintiff's treatment, and the ALJ's hearing observations discussed above reasonably weigh in favor of finding Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not supported by the overall record despite his alleged limited activities." *Id.* at 17. Moreover, Plaintiff has not identified "any objective findings that conflict with the ALJ's subjective symptom analysis or RFC finding." *Id.*

In Plaintiff's reply, he contends that the ALJ "relied on boilerplate, generic assertions that have been explicitly discredited by authority" and also that the "Commissioner does not refute this demonstration of error, and so it is apparent that [Plaintiff's] case is due to be remanded for proper consideration." [DE 34 at 7]. According to Plaintiff, "[w]hile the Commissioner focuses on whether objective evidence alone clearly establishes disability, the ALJ is also required to consider *subjective* complaints in light of the relevant factors." *Id.* at 8. Plaintiff believes that subjective complaints are especially important in cases involving psychiatric impairments. *Id.*

When a claimant reports subjective testimony of pain or other symptoms, the claimant must satisfy "two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain [or other symptom]; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain [or symptom]." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); 20 C.F.R. § 404.1529(a). Credibility determinations are the province of the ALJ, and a court should not "disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v. Comm'r of Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Additionally, "[t]he question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms and limitations, the magnitude of the pain and the extent of those symptoms and limitations attested to by the claimant was not supported by medically acceptable clinical and diagnostic techniques." [R. 16]. She found that the objective medical evidence failed to substantiate Plaintiff's assertions and that there was "insufficient objective medical evidence that the claimant's asserted impairments are of such severity that they can reasonably be expected to give rise to the alleged level of pain and functional limitations." [R. 16]. The ALJ explicitly considered the criteria set forth in the regulations at 20 CFR 404.1529(c)(3) and 416.929(c)(3) and in Social Security Ruling 16-3p in evaluating Plaintiff's subjective complaints. [R. 16]. She explained that the two consultative exam reports clearly contradicted Plaintiff's stated limitations and degree of physical impairments, with no clear

support for claims of herniated discs; no evidence of treatments; no prescribed medications for pain; and no ER visits for debilitating back pain or other diagnostic studies, such as MRIs of the cervical spine or the lumbar spine [R. 17]. The ALJ concluded that, she was

> not persuaded the claimant experiences symptoms of a severity and frequency as to preclude the level of work reflected in the above RFC determination. Although the claimant has described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be less persuasive than the other factors discussed in this decision.

[R. 19].

In sum, the ALJ made clearly articulated credibility findings and pointed to specific reasons for discrediting Plaintiff's subjective complaints of disabling pain and functional limitations. *See Mitchell*, 771 F.3d at 782. There is substantial evidence to support the ALJ's credibility determination, as outlined above, and the ALJ was not "clearly wrong" in discrediting it. *See Werner*, 421 F. App'x at 939.

C.  Whether the Commissioner Sustained Her Burden of Establishing that There is Other Work in the National Economy that Plaintiff Can Perform

Plaintiff argues, since the RFC assessment is allegedly not supported by substantial evidence, the vocational witness testimony, which was based on a hypothetical tracking that RFC, "cannot provide support for the ALJ's findings." [DE 25 at 20]. Plaintiff also asserts that the VE's testimony regarding absences at work "actually supports a finding that there is no work in the

national economy that [Plaintiff] can perform, when considering the limitations flowing from his panic disorders as confirmed by Dr. Ward." *Id.*

In response, Defendant maintains that the ALJ "properly posed a hypothetical question to the VE that reflected Plaintiff's RFC in all respects," and the frequent absence issue was not part of the ALJ's RFC and does not appear in any of the medical source opinions. [DE 26 at 18–19].

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson*, 284 F.3d at 1227. However, hypotheticals are only required to include "claimant's impairments," not each and every symptom experienced. *See Ingram*, 496 F.3d at 1270 (finding that the ALJ did not pose an improper hypothetical when omitting characteristics claimant alleged to suffer but were not supported by medical records).

Here, the ALJ properly posed a hypothetical involving an individual of the same age, education, and work experience as Plaintiff, who can perform work at the medium level and has all the same impairments as Plaintiff. [R. 56–57]. While the ALJ did not include the imposition of unscheduled breaks adding "up to at least 25% of the workday," such a requirement was not backed by objective medical data, and thus did not need to be included in the hypothetical. [R. 57]. The Court has already found that the ALJ properly considered Dr. Ward's opinion and only found it to be partially persuasive, and Plaintiff's argument about the inclusion of unscheduled breaks is based on Dr. Ward's findings. Therefore, the ALJ posed a proper hypothetical for the VE's testimony to constitute substantial evidence. *See Wilson*, 284 F.3d at 1227.

In sum, upon careful review of the ALJ's decision, the ALJ clearly fully reviewed all of the record evidence and complied with the various social security regulations in coming to her conclusions.

## IV. <u>CONCLUSION</u>

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Court finds that the record contains substantial evidence to support the denial of benefits to Plaintiff. The Court further finds that the ALJ applied the correct legal standards. Thus, the decision of the Commissioner is **AFFIRMED**.

2. Accordingly, Plaintiff's Motion for Summary Judgment [DE 25] is hereby **DENIED**, and Defendant's Motion for Summary Judgment [DE 26] is hereby **GRANTED**.

3. Judgment will be entered separately.

**ORDERED AND ADJUDGED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 14th day of September, 2022.

WILLIAM MATTHEWMAN
United States Magistrate Judge